847 F.2d 83
 11 Fed.R.Serv.3d 354
 DR. BERNARD HELLER FOUNDATION, Herman Mark Harris and Ruth
O. Freedlander, Herman Mark Harris, Appellant,
v.
Sidney LEE, Frieda Pettis, John Doe I, William Newkirk, Alan
Bronstein, Andreas Esberg, Lewis Kranette, West Indies
Investment Co., Inc., West Indies Investment Co. (St.
Croix), St. Croix Real Estate Development Corporation,
William Newkirk, Alan Bronstein, Andreas Esberg, Appellees.
DR. BERNARD HELLER FOUNDATION, Herman Mark Harris and Ruth
O. Freedlander, Dr. Bernard Heller Foundation and
Ruth O. Freedlander, Appellants,
v.
Sidney LEE, Frieda Pettis, John Doe I, William Newkirk, Alan
Bronstein, Andreas Esberg, Lewis Kranette, West Indies
Investment Co., Inc., West Indies Investment Co. (St.
Croix), St. Croix Real Estate Development Corporation,
William Newkirk, Alan Bronstein, Andreas Esberg, Appellees.
 Nos. 87-3609, 87-3624.
 United States Court of Appeals,
Third Circuit.
 Argued April 18, 1988.
Decided May 23, 1988.
As Amended May 27, 1988.
 
 Frederick G. Watts (argued), Garry W. Morse, Watts & Streibich, St. Thomas, U.S.V.I., for appellants.
 Richard H. Hunter, Hunter Colianni Cole & Turner, Christiansted, St. Croix, U.S.V.I., for appellees, Andreas Esberg, Alan Bronstein and William Newkirk.
 Before SEITZ, SLOVITER and BECKER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Factual and Procedural Background
 
 1
 The issues on this appeal concern only the district court's order requiring plaintiffs to pay for certain of the attorneys' fees and costs incurred by the successful defendants who are appellees here. Therefore, a brief summary of the underlying action will suffice for our purposes.
 
 
 2
 Dr. Bernard Heller and his nephew, Sidney Lee, each owned nearly 50% of the stock of West Indies Investment Co., Inc. and its two wholly-owned subsidiaries (jointly WIICO). When Dr. Heller died in 1976, he left his WIICO stock to the Dr. Bernard Heller Foundation (Foundation), a New York charitable trust. In 1985, the Board of Directors of WIICO agreed to liquidate WIICO, and such liquidation was completed by June 30, 1987.
 
 
 3
 In 1986, Herman Mark Harris, who had been Dr. Heller's attorney, and Ruth O. Freedlander, directors of WIICO and trustees of the Dr. Bernard Heller Foundation, and the Foundation, a major shareholder of WIICO, filed a stockholder's derivative suit in the District Court of the Virgin Islands, seeking an accounting and damages for alleged losses to WIICO attributable to financial transactions occurring over the course of a decade. The district court's jurisdiction was founded on V.I.Code Ann. tit. 4, Sec. 32 and tit. 13, Secs. 341 and 288.
 
 
 4
 The claims against the WIICO officers and directors, alleging that they converted corporate funds, committed fraud, and breached their fiduciary duties, were settled on April 27, 1987 for $250,000. These defendants are not parties to this appeal. The remaining claim, set forth in Count VII of the complaint, alleged that defendants William Newkirk, Alan Bronstein and Andreas Esberg, who were WIICO's accountants, breached their duty to "exercise the usual and customary skills required of certified public accountants" in preparing audits, which the accountants knew "would be relied upon by directors and shareholders of [WIICO, et al.], and said audits were in fact relied upon by the plaintiffs." App. at 17.
 
 
 5
 In their answer of June 6, 1986, the accountant defendants included the applicable statute of limitations as an affirmative defense. On April 8, 1987, after discovery was completed, the accountant defendants filed a motion for summary judgment in which they argued that "the applicable two year statute of limitations bar[red] all claims relating to transactions or accounting services which occurred more than two years prior to the date on which litigation was instituted" and that any action relevant to the financial statements and opinion letters of July 1984 and October 1985, while timely, was barred because the "plaintiffs ha[d] not, in fact, relied upon those documents to their detriment." App. at 98-99. The district court granted the defendants' motion and dismissed Count VII with prejudice.
 
 
 6
 The accountant defendants then filed a motion for attorneys' fees and costs pursuant to V.I.Code Ann. tit. 5, Sec. 541. After defendants supplemented their motion with more detail as required by the court, the district court awarded partial indemnification to the prevailing defendants including the following:
 
 
 7
 Legal Fees $30,750.00
Expert Witness Fees 15,000.00
Other Expenses 5,540.45[1]
---------------

1 There is a slight discrepancy in the Other Expenses figure which is not
materiall to a determination of this appeal.
 -----------------------------
Total $51,290.45
 -----------------------------
 
 
 8
 Harris, Freedlander and the Foundation have appealed. They raise the following issues: First, relying on the recent Supreme Court decision, Crawford Fitting Co. v. J.T. Gibbons, Inc., --- U.S. ----, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), they contend that the district court's grant of $15,000 toward the expert witness fees paid by defendants to specialists in forensic accounting was in excess of statutory authority and was erroneous as a matter of law. Alternatively, they argue that even if Crawford were not controlling in the instant case, the award of $15,000 toward witnesses who were not indispensable to the determination of the case was an abuse of discretion. Second, plaintiffs contend that the district court erred in awarding deposition and travel costs both because the court failed to make factual findings that the depositions were "reasonably necessary in the action" and because the award of travel costs is not authorized by statute. Third, plaintiffs maintain that the district court abused its discretion in awarding $30,750 in attorneys' fees. Finally, they argue that the district court erred in holding plaintiffs Harris and Freedlander jointly and severally liable for the award of attorneys' fees and costs. We proceed to consider these issues.
 
 II.
 Expert Witness Fees
 
 9
 In Crawford Fitting Co. v. J.T. Gibbons, Inc., --- U.S. ----, 107 S.Ct. 2494, 2496, 96 L.Ed.2d 385 (1987), the Supreme Court held that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of [28 U.S.C.] Sec. 1821, absent contract or explicit statutory authority to the contrary." Therefore, it limited reimbursement for a party's expert witness fees to section 1821's $30-per-day limit.
 
 
 10
 Defendants argue that because the Crawford decision was based on the interrelationship of Fed.R.Civ.P. 54(d), 28 U.S.C. Sec. 1920 and 28 U.S.C. Sec. 1821, it does not preclude the district court's exercise of discretion to award a higher expert fee pursuant to V.I.Code Ann. tit. 5, Sec. 541 when it is sitting as a local court of general jurisdiction and applying Virgin Islands substantive law. However, this court has recently relied on the "clear mandate of Crawford " in concluding that the District Court of the Virgin Islands had erred in awarding $10,000 in expert witness fees to the plaintiff's witnesses. Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir.1988). Our holding in Dominic that the taxation of witness fees as costs may not exceed the $30 per day limit set in 28 U.S.C. Sec. 1821 is dispositive of the issue before us.
 
 
 11
 We reject the suggestion that because there is no reference in Dominic to V.I.Code Ann. tit. 5, Sec. 541, that decision is not controlling on the district court's authority under the Virgin Islands statute to make a higher award for a party's expert fee. The Supreme Court's statutory analysis in Crawford, which was the basis of our Dominic holding, is also applicable when the district court acts expressly pursuant to section 541.
 
 
 12
 In Crawford, the Supreme Court reasoned that 28 U.S.C. Sec. 1821, which provides, in pertinent part, that "[a] witness shall be paid an attendance fee of $30 per day for each day's attendance," 28 U.S.C. Sec. 1821(b) (1982), "specifies the amount of the fee that must be tendered to a witness," Crawford, 107 S.Ct. at 2497; that 28 U.S.C. Sec. 1920, which provides, in pertinent part, that "[a] judge or clerk of any court of the United States may tax as costs the ... [f]ees and disbursements for ... witnesses," 28 U.S.C. Sec. 1920(3) (1982), "provides that the fee may be taxed as a cost," Crawford, 107 S.Ct. at 2497; and that "Rule 54(d) provides that the cost shall be taxed against the losing party unless the court otherwise directs," id. The language and interrelationship of 28 U.S.C. Secs. 1920 and 1821 convinced the Court that "Congress [had] comprehensively addressed the taxation of fees for litigants' witnesses" in those statutes. Id.
 
 
 13
 In rejecting the argument that Rule 54(d) empowered courts with the discretion to award costs beyond the statutory limit set by section 1821, the Court in Crawford stated, "[t]he discretion granted by Rule 54(d) is not a power to evade this specific congressional command. Rather it is solely a power to decline to tax, as costs, the items enumerated in Sec. 1920." Id. at 2498.
 
 
 14
 We consider then whether the applicable Virgin Islands scheme differs materially from that before the Court in Crawford. Rule 54(d) is fully applicable to the District Court of the Virgin Islands. Congress specifically provided that "[w]here appropriate ... the rules of practice heretofore or hereafter promulgated and made effective by Congress or the Supreme Court of the United States pursuant to title[ ] ... 28 shall apply to the district court [of the Virgin Islands] and appeals therefrom." 48 U.S.C. Sec. 1614(b) (Supp. III 1985).
 
 
 15
 Defendants seek to draw a distinction between the rules applicable when the jurisdiction of the District Court of the Virgin Islands is predicated upon federal law, which they concede is governed by Crawford, and when it is sitting as a court of general original jurisdiction. The statutory provision making the federal practice rules applicable to the District Court of the Virgin Islands makes no such distinction. In fact, recently, Judge Maris, speaking for this court in Government of the Virgin Islands v. 19.623 Acres of Land, 602 F.2d 1130, 1134 (3d Cir.1979), which was a condemnation proceeding initiated under Virgin Islands substantive law, V.I.Code Ann. tit. 28, Secs. 411-422, noted that "the Federal Rules of Civil Procedure which govern the practice and procedure in civil cases including condemnation proceedings are expressly made applicable to the Virgin Islands by ... the Revised Organic Act, 48 U.S.C.A. Sec. 1614(b)." It follows that the Crawford Court's construction of Rule 54(d) as giving the district courts discretion only as to whether or not to tax costs to the prevailing party controls here.
 
 
 16
 Similarly, 28 U.S.C. Sec. 1821, which the Crawford Court construed as limiting a party's reasonable costs for its expert fees to the $30 a day specified therein, is also applicable to the District Court of the Virgin Islands. Section 1821 applies to witnesses in "any court of the United States," 28 U.S.C. Sec. 1821(a)(1), which for purposes of that section is defined "to include any court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States," 28 U.S.C. Sec. 1821(a)(2). The 1968 amendment of section 1821 was designed to "make[ ] clear that witnesses in the ... Virgin Islands are to be accorded the same fees and allowances as are provided for witnesses in other district courts of the United States." H.R.Rep. No. 1076, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 1792, 1807.
 
 
 17
 Unlike Rule 54(d) and 28 U.S.C. Sec. 1821, the language of 28 U.S.C. Sec. 1920, which authorizes a judge "of any court of the United States" to tax certain specified costs, cannot be applied to the District Court of the Virgin Islands because generally that court is not encompassed within the term "court of the United States." See 28 U.S.C. Sec. 451 (term "court of the United States" includes "any court created by Act of Congress the judges of which are entitled to hold office during good behavior"); 48 U.S.C. Sec. 1614(a) (judges for the District Court of the Virgin Islands shall hold office for terms of ten years); United States v. George, 625 F.2d 1081 (3d Cir.1980). The different scope of the term in section 1821 does not affect this general definition. See United States v. Lewis, 456 F.2d 404, 408 (3d Cir.1972) (a Virgin Islands court "may be a 'court of the United States' for some purposes but not for others.")
 
 
 18
 The History Notes following V.I.Code Ann. tit. 5, Sec. 541, the Virgin Islands cost and fee statute, indicate that section 541 was enacted because section 1920 did not apply to the District Court of the Virgin Islands. Both statutes provide that fees of witnesses, inter alia, may be taxed as costs.[2]
 
 
 19
 Defendants point us to no authority that suggests that the Virgin Islands legislature intended that the provision allowing taxation of witness fees as costs, embodied in section 541(a)(1), should be read more broadly than the Court in Crawford read section 1920. Indeed, the Virgin Islands legislature knew how to draft such a broader provision into the cost statute, as it did when it provided in V.I.Code Ann. tit. 5, Sec. 541(a)(6) and (b), for taxation of attorneys' fees as costs. Therefore, we reject the defendants' argument that section 541(a)(1) is an explicit statutory authorization that permits a higher expert witness fee.[3]
 
 
 20
 It follows that the reasoning of Crawford, which was based on the language and interrelationship of Rule 54(d), section 1821 and section 1920, would be equally applicable to the language and interrelationship of Rule 54(d), section 1821 and V.I.Code Ann. tit. 5, Sec. 541, which is the Virgin Islands counterpart of section 1920. Our holding in Dominic that the District Court of the Virgin Islands had no authority to award witness fees in excess of the limits set by section 1821, i.e., $30 per day, is equally applicable to this case, notwithstanding the district court's reliance on section 541(a)(1). The district court erred as a matter of law in awarding defendants costs of $15,000 for the expert witness, and on remand the court should modify its order to limit its award to the statutory amount.[4]
 
 III.
 Attorneys' Fees
 
 21
 Plaintiffs argue next that the district court abused its discretion in awarding $30,750 to the accountant defendants as partial indemnification of their attorneys' fees. Plaintiffs concede that the award of attorneys' fees as costs, authorized by V.I.Code Ann. tit. 5, Sec. 541(a)(6), is reviewed under an abuse of discretion standard. See Lucerne Investment Co. v. Estate Belvedere, Inc., 411 F.2d 1205, 1207 (3d Cir.1969).
 
 
 22
 Plaintiffs argue that there was such an abuse of discretion here because the fee award included reimbursement not only for the services of defendants' Virgin Islands counsel, for whom the district court awarded $18,850, but also for defendants' New York counsel, for whom the court awarded $11,900. Defendants have explained that they engaged a New York law firm which specializes in accounting malpractice defense cases because such accounting malpractice claims are unusual in the Virgin Islands and they require specialized experience. They also explained that it was cost effective to engage New York attorneys because two of the three accountant defendants were located in New York near the law firm's office.
 
 
 23
 The district court made a specific finding that the two firms employed by appellees generally did not duplicate each other's efforts, and stated that where there was duplication it took that into account. The court awarded only some, not all of the fee requested for New York counsel, and reduced the rate of compensation. In light of the district court's careful and detailed analysis, and its finding that "outside counsel was a reasonable and necessary part of the defense of the accountants," App. at 384, we cannot hold that an award that encompassed the services of a New York firm was an abuse of discretion.
 
 
 24
 Plaintiffs also argue that the expertise of mainland counsel was not necessary, as the case was resolved at summary judgment on the issues of statute of limitation and reliance, defenses which could have been raised earlier. There is certainly some merit to the general contention that a party should not be required to pay for attorneys' services that could have been avoided. In this case, however, the pre-trial order authorized the parties to file motions up to April 8, 1987, and the accountants' motion for summary judgment was filed on that date. Because the calendar call was set for April 21, 1987, defendants obviously could not afford to neglect preparation of their entire case. In their preparation, defendants' counsel were required to review various financial documents, including more than 2,000 checks with accompanying documentation, defendants' 1,332 pages of work papers, and various financial statements.
 
 
 25
 It may be that trial courts, taking advantage of Rule 16, could direct the parties to sequence their potentially dispositive motions and related discovery, and thereby elicit rulings on defenses such as the statute of limitations at an early stage of the litigation. In this case, although the accountant defendants put plaintiffs on notice that they relied on the statute of limitations because they pled it as an affirmative defense, plaintiffs point us to nothing in the record that suggests that plaintiffs themselves attempted to get the court to resolve this issue earlier. Under these circumstances, defendants were entitled to proceed with the preparation of the full range of their defenses, and the court did not abuse its discretion in taking such preparation into account in fixing attorneys' fees.
 
 IV.
 Deposition and Travel Costs
 
 26
 Plaintiffs also challenge the district court's award of deposition costs in the amount of $3,180.75 and travel costs in the amount of $2,029.70. They suggest that the district court erred in ordering them to reimburse defendants for travel expenses for hotel accommodations, airfare, meals and ground transportation, and argue that defendants' documentation for such costs, which identified them as "for the initial client meetings and conferences with co-counsel in May, 1986 in New York, and for the several depositions taken in late March and early April, 1987 in New York and Washington, D.C.," App. at 376, demonstrates that some of the costs were improper.
 
 
 27
 Section 541(a)(2) allows as costs "[n]ecessary expenses of taking depositions which were reasonably necessary in the action." In allowing the travel expense, the district court stated: "While we do not usually award travel costs, in view of the circumstances of this case, i.e., co-counsel and opposing parties in New York and opposing parties in St. Thomas, we will allow hotel accommodations, air fare, meals and ground transportation and seaplane travel." App. at 388; see also Damidaux v. Hess Oil Virgin Islands Corp., 18 V.I. 417, 421-22 (D.C.V.I.1981) (no award of travel expenses incurred in connection with the taking of depositions absent special circumstances); Kriegel v. St. Thomas Beach Resorts, Inc., 18 V.I. 365, 368 (D.C.V.I.1981) (same).
 
 
 28
 We cannot hold that the district court abused its discretion in ordering reimbursement of travel expenses for depositions in this case. However, we are unable to ascertain from the district court's order or the supporting documentation whether any of the costs awarded were for "client meetings and conferences with co-counsel." An award for such expenses would have been unauthorized as a matter of law because these expenses are unrelated to any reimbursable costs listed in section 541(a). We will therefore remand so that the district court may make the appropriate findings and adjustments after the defendants provide the necessary details. The court should also deduct the costs for the seaplane transport, which defendants' counsel agreed at oral argument would be waived.
 
 
 29
 Plaintiffs also challenge the full $3,180.75 award for deposition costs. Plaintiffs contend that the depositions of the Foundation beneficiaries, Hebrew Union College, United Jewish Appeal, Torah Umesorah, and Jewish Theological Seminary, were not "reasonably necessary to the action." The district court did not make findings on this point. Because we are remanding this matter to the district court, we believe it would be appropriate for the district court to review plaintiffs' objection, and to make an express determination that these depositions were "reasonably necessary," if it so finds.
 
 
 30
 Although we are remanding to the district court the award for Deposition and Travel Expenses, categorized as "Other expenses" in the court's order, we urge the parties to attempt to reach agreement on this matter, which in the context of this lawsuit consists of minutiae.
 
 V.
 
 31
 The Individual Plaintiffs' Joint and Several Liability for
 
 Fees and Costs
 
 32
 Finally, the individual plaintiffs argue that the district court erred in holding them jointly and severally liable for attorneys' fees and costs. They argue that since no benefit was to inure to Harris and Freedlander personally but only to the Foundation, which is the WIICO shareholder, Harris and Freedlander should not be held jointly and severally liable.
 
 
 33
 It is not clear from the court's order whether it ordered costs to be paid by the individual plaintiffs in their individual capacities, and if so, why. We cannot tell if this was an oversight, or if the district court was relying on certain unexpressed facts or legal principles. On remand, the court will have an opportunity to address this issue in the first instance, and provide any helpful amplification.
 
 VI.
 Conclusion
 
 34
 For the foregoing reasons (1) we will vacate the district court's award of $15,000 in expert witness fees and direct the court to award the amount set forth in section 1821; (2) we will affirm the award of attorneys' fees; (3) we will vacate the award for "Other expenses" and remand to the district court to award costs only for that portion of travel costs incurred in connection with the taking of depositions that were "reasonably necessary," and to delete the award for costs for the seaplane travel; and (4) we will vacate so much of the district court's order holding plaintiffs jointly and severally liable for fees and costs so that the district court may reconsider that issue and make the necessary predicate findings.[5] The appeal costs are to be borne equally by plaintiffs jointly for one-half and defendants for the other.
 
 
 35
 2 The Virgin Islands statute provides, in relevant part:
 
 
 36
 (a) Costs which may be allowed in a civil action include:
 
 
 37
 (1) Fees of officers, witnesses, and jurors;
 
 
 38
 * * *
 
 
 39
 V.I.Code Ann. tit. 5, Sec. 541.
 
 
 40
 3 Our memorandum opinion in Williams v. Government of the Virgin Islands, Nos. 85-3635, 85-3642 and 85-3649 (3d Cir. Jan. 30, 1987) [810 F.2d 1166 (table) ], is not to the contrary. First, that opinion is unreported, and hence not precedential. See IOP Ch. 8C. Second, we noted in the Williams opinion that the parties acknowledged "that the district court possesses the power to award expert witness fees as costs." Slip op. at 14. Thus, the issue raised here was not before us. Defendants are simply wrong in seeking to characterize the issue as a jurisdictional one which is always before us.
 
 
 41
 4 Plaintiffs do not challenge their obligations to pay the amount set forth in section 1821 for the expert witnesses, and hence we do not decide whether that section authorizes recovery of even that amount in these circumstances.
 
 
 42
 5 On remand, the parties and the court may consider whether a conflict of interest is presented if the same attorney continues to represent the Foundation and the individual plaintiffs.